

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-14-2006

# Mehboob v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-1952

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Mehboob v. Atty Gen USA" (2006). *2006 Decisions*. Paper 1265.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1265

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 05-1952
_____

GHULAM MEHBOOB,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES;
SECRETARY OF DEPARTMENT OF HOMELAND SECURITY,

Respondents
_____

On Petition for Review from an
Order of the Board of Immigration Appeals
(Board No. A 46 188 944)
Immigration Judge Grace A. Sease
_____

Submitted Under Third Circuit LAR 34.1(a)
February 13, 2006

Before: SCIRICA, *Chief Judge*, BARRY and FISHER, *Circuit Judges*.

(Filed: April 14, 2006)
_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

This case requires us to decide whether a crime with no mens rea requirement may reasonably be said to involve "moral turpitude." We hold that the Board of Immigration Appeals, the agency charged with making that determination in the first instance, has not explained itself sufficiently for us to evaluate its reasoning. We will accordingly vacate the Board's decision and remand for reconsideration and a fuller explanation.

**I.**

**A.**

Ghulam Mehboob is a lawful permanent resident who has lived in the United States since 1997. In 2001, he was convicted of misdemeanor indecent assault under Pennsylvania law, 18 Pa. Cons. Stat. § 3126, and sentenced to two years' probation and a fine of $146. In September of 2004, the Department of Homeland Security initiated removal proceedings against him under 8 U.S.C. § 1227(a)(2)(A)(i), which provides for the deportation of aliens who commit crimes "involving moral turpitude."[1] Immigration Judge Grace Sease determined that Mehboob was removable, and the Board of

---

[1]The Notice To Appear alleging removability under § 1227(a)(2)(A)(i) is dated September 9, 2004. (App. 48.) Another Notice To Appear, dated July 12, 2002, *see* App. 46, but not apparently served on Mehboob until August 6, 2004 (App. 47), alleged removability under §§ 1101(a)(43)A) (aggravated felony) and 1227(a)(2)(E)(i) (child abuse). The Board did not decide whether those provisions justified removal, basing its ruling solely on § 1227(a)(2)(A)(i). (A.R. 3) (BIA decision) ("Because respondent is removable on this charge, we need not express an opinion as to whether the crime would also support the 'aggravated felony' and 'crime of child abuse' charges pending against him."). Because the Board did not rule on the other charges, they are not before us here.

2

Immigration Appeals affirmed in an unpublished per curiam opinion. We have

jurisdiction under 8 U.S.C. § 1252. *Dia v. Ashcroft*, 353 F.3d 228, 234 (3d Cir. 2003).

## II.

## A.

When we assess the effects of prior convictions on an immigrant's legal status

under the INA, we do not consider the immigrant's actual conduct; we look instead only

to the statute of conviction and ascertain the least culpable conduct which could support a

conviction under that statute. *Partyka v. Attorney Gen.*, 417 F.3d 408, 411-12 (3d Cir.

2005). When an immigrant is convicted under a statute with several divisible provisions,

we consider only the provision or provisions under which he was convicted, *see id.* at

411; *In re Ajami*, 22 I. & N. Dec. 949, 950 (BIA 1999), and, if more than one provision is

applicable, we identify the least culpable conduct that could support conviction under any

of them. *Partyka*, 417 F.3d at 411. We look to state law to ascertain the elements of state

crimes. *Id.*; *Knapik v. Ashcroft*, 384 F.3d 84, 88 (3d Cir. 2004).

## B.

Under current BIA caselaw as construed by controlling precedent in this Circuit,

the set of crimes "involving moral turpitude" for purposed of the INA is determined with

reference to the mens rea required for conviction, *Partyka*, 417 F.3d at 413 (citing *In re

Khourn*, 21 I. & N. Dec. 1041, 1046 (BIA 1997); *In re Flores*, 17 I. & N. Dec. 225, 227

(BIA 1980), and the threshold condition for moral turpitude under § 1227 is a mens rea of

3

at least recklessness; crimes requiring proof of negligence or lesser mens rea are not crimes of moral turpitude under the INA. *Id.* at 414-16.

## C.

Under Pennsylvania law, a person is guilty of indecent assault if he or she "has indecent contact with the complainant or causes the complainant to have indecent contact with the person" and one of several triggering conditions is met, including, relevant to this case, that "the person does so without the complainant's consent," 18 Pa. Cons. Stat. § 3126(a)(1), or that "the complainant is less than 16 years of age and the person is four or more years older than the complainant and the complainant and the person are not married to each other," *id.* § 3126(a)(8).[2] Indecent contact is defined as "any touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in either person." *Id.* § 3101.

Mehboob's conviction implicates the two subparagraphs of § 3126 noted above, (a)(1) and (a)(8). The element common to the two provisions, "indecent contact," requires a mens rea of purpose, as is clear from the definition quoted above. Physical contact is not "indecent" unless undertaken "for the purpose" of sexual gratification. *Id.*

---

[2]The other triggering conditions are: the use of forcible compulsion, 18 Pa. Cons. Stat § 3126(a)(2); the threat of forcible compulsion, *id.* § 3126(a)(3); that the complainant is unconscious or unaware of the contact, *id.* § 3126(a)(4); the use of intoxicants to impair the complainant's control over her conduct, *id.* § 3126(a)(5); that the complainant suffers from a mental disability rendering her incapable of consent, *id.* § 3126(a)(6); or that the complainant is under thirteen, *id.* § 3126 (a)(7). Neither Mehboob nor the government contend that any of these other conditions apply; therefore we will focus, as do the parties, on (a)(1) and (a)(8).

4

§ 3101.  The provisions differ, however, in the "triggering conditions" necessary for liability:  subsection (a)(1) involves the complainant's consent, while subsection (a)(8) involves the complainant's age.

As to subsection (a)(1), the Pennsylvania courts have held that it contains an implied mens rea requirement of recklessness.  The state must prove that the defendant was at least reckless with respect to the complainant's lack of consent.  *Commonwealth v. Carter*, 418 A.2d 537, 541 (Pa. Super. Ct. 1980) ("In the present case, appellant was not charged with subsection (2) but with subsection (1) and for the reasons above, the proper element of intent is not 'knowing' but at least recklessness. . . .  [A]t a minimum, recklessness [must] be established before the evidence is sufficient for a guilty verdict."); *see also Commonwealth v. Thomson*, 673 A.2d 357, 359 (Pa. Super. Ct. 1996) (reaffirming holding in *Carter*).

As to subsection (a)(8), the Pennsylvania courts have held that, "[t]o prove the crime of indecent assault, the Commonwealth must prove all the elements provided for in 18 Pa.C.S. § 3126."  *Commonwealth v. Morales*, 40 Pa. D. & C. 4th 456, 462 (1998).  Those elements, as noted above, are limited to the contact itself, the complainant's age, and the age difference between the defendant and the complainant.  Mens rea is not a statutory element of (a)(8), nor – in contradistinction to subsection (a)(1) – has any

5

mental state of the defendant been held by the courts to be implicitly required for conviction.[3]

Unlike subsection (a)(1), therefore, which requires recklessness, subsection (a)(8) defines a strict liability offense. The elements of (a)(8) do not include the defendant's mental state, and therefore the least culpable conduct that could support a conviction under (a)(8) is conduct without any culpable mental state at all, not even negligence.

The least culpable conduct reached by § 3126, in other words, is factually consensual sexual contact between an adult defendant and an underage complainant whom the defendant honestly and reasonably believes to be an adult. Such a defendant may be convicted under subsection (a)(8) without having any knowledge that he had engaged in the prohibited conduct.[4] In these circumstances, mens rea would appear to be absent, and thus, under Board precedent, so would moral turpitude.

---

[3]Pennsylvania law does provide a "mistake of age" defense to indecent assault. Section 3102 provides that "[w]hen criminality depends on the child's being below a critical age older than 14 years, it is a defense for the defendant to prove by a preponderance of the evidence that he or she reasonably believed the child to be above the critical age." 18 Pa. Cons. Stat. § 3102. However, the existence of a separate statutory or common law defense (which only underscores the lack of a mens rea requirement as to the age element) is irrelevant to our "least culpable conduct" test, which is restricted to the elements of the crime, and concerns only the minimum set of facts the government must make out to secure a conviction.

[4]We emphasize that the relevant knowledge is knowledge of fact, not of law. It is not that the defendant intended to engage in sexual contact with a minor but didn't know that such contact was prohibited, but rather that the defendant didn't intend to engage in sexual contact with a minor at all.

6

It therefore makes a difference to any assessment of the moral turpitude inherent in Mehboob's § 3126 conviction whether he was convicted under (a)(1) or (a)(8). However, the criminal complaint, which is the only record evidence of the charging provision, references "Section 3126" without specification of a subsection. The complaint's description of "acts committed by the accused" reads: "The defendant unlawfully engaged in indecent contact with the complainant, age 15, a customer in [Mehboob's] store, by pinching her cheek and touching her breast." The Board's opinion also does not specify a particular charging provision, instead characterizing the offense as "defined by reference to nonconsensual or otherwise abusive sexual contact." This characterization obfuscates the distinction between (a)(1) and (a)(8), a distinction which could be dispositive in this case, because the two provisions require different levels of mens rea.

The Board's explanation is, in its entirety, as follows:

> We are satisfied that the respondent's crime, which is defined by reference to nonconsensual or otherwise abusive sexual contact, is one in which moral turpitude necessarily inheres. *See*, *e.g.*, *Maghsoudi v. INS*, 181 F.3d 8, 14-15 (1st Cir. 1999) (indecent assault under Massachusetts law is a crime involving moral turpitude); *Matter of Z-*, 7 I. & N. Dec. 253 (BIA 1956) (indecent assault under Connecticut law is a crime involving moral turpitude). We note in particular that because the respondent's offense involved sexually abusive conduct it is not comparable to the conventional "assault" crime at issue in *Matter of Fualaau*, 21 I. & N. Dec. 475 (BIA 1996).

This is not much to work with, and the cited cases are no help. The decision in *Maghsoudi* relied on the consent element, *see* 181 F.3d at 15 ("Given that lack of consent was an element of the crime to which *Maghsoudi* pleaded guilty, a determination that the

7

crime involved moral turpitude is consistent with earlier Board determinations."), and in *Matter of Z-* the statute penalized the acts themselves, which were criminal regardless of consent and regardless of the complainant's age, 7 I. & N. Dec. at 254 ("[C]onsent is no defense; and . . . in view of the nature of the offense, it might well be questioned whether consent would justify a disregard of the invasion of the public welfare and morality of the state which would be caused by the acts forbidden, even in the absence of the statutory provision."). In both cases, the act the defendant intended to commit was itself forbidden (indeed, in *Matter of Z-*, it could not even be named). By contrast, no intention to touch an underage person is required or implied by conviction under (a)(8). The least culpable conduct that could support conviction under § 3126 (a)(8) involves intent to engage in perfectly legal activity.

The third case, *Fualaau*, cuts against the Board's decision in this case, and the Board's cursory attempt at distinguishing it fails to impress. In *Fualaau*, the Board, in holding that an assault conviction did not involve moral turpitude, stated explicitly that "an analysis of an alien's intent is critical to a determination regarding moral turpitude." 21 I. & N. Dec. at 478. The Board found turpitude lacking even though a mens rea of recklessness was an element of the offense, because the actus reus did not involve "serious bodily injury." *Id.* It is not self-evident to us that the statute at issue in that case is "not comparable" to the statute at issue in this one, and the Board has failed to supply an argument supporting that assertion.

8

We may surmise that in analyzing § 3126, the Board was thinking only about (a)(1) and not (a)(8). Under Pennsylvania law, as we have seen, (a)(1) requires a mens rea of recklessness. Perhaps the Board reasoned that any nonconsensual sexual touching is infliction of "serious bodily injury," and that the statute thus links mens rea and actus reus as contemplated in *Fualaau*. This sort of rationale might be properly applied to (a)(1), but it has no application to (a)(8), which has no mens rea requirement at all. The Board's opinion simply does not address (a)(8).

Such an inadequate analysis does not make for satisfactory lawmaking, and it is unredeemed by the briefs on appeal. Both parties focus their arguments on (a)(1), the consent provision, and neither side addresses what for us is the crucial question: whether a strict liability offense such as (a)(8) can reasonably be said to be a "crime involving moral turpitude." We have no way of telling, from the Board's opinion, whether it thought that Mehboob was convicted exclusively under (a)(1), or whether it thought that (a)(8) defines a crime of moral turpitude. The former proposition is not supported by the record, and the latter is arguably inconsistent with longstanding Board precedent as adumbrated and approved in *Partyka*. In such circumstances we cannot approve the Board's opinion.

**III**.

We emphasize, however, that the Board may be within its authority to extend its interpretation of "moral turpitude" to the crime defined by (a)(8). Executive branch agencies are entitled to revise their interpretations of ambiguous statutes assigned to them

9

for implementation, and courts must defer to reasonable agency interpretations. On remand, the Board needs to explain explicitly why, in its view, 18 Pa. Cons. Stat. § 3126(a)(8) does or does not define a crime of moral turpitude under 8 U.S.C. § 1227(a)(2)(A)(i). Because "unpublished precedent is a dubious basis for demonstrating the type of inconsistency which would warrant rejection of deference," *De Osorio v. INS*, 10 F.3d 1034, 1042 (4th Cir. 1993), "[w]e will not bind the BIA with a single non-precedential, unpublished decision any more than we ourselves are bound by our own unpublished orders." *Leal-Rodriguez v. INS*, 990 F.2d 939, 946 (7th Cir. 1993).

**IV.**

For the foregoing reasons, we will grant the petition for review and remand the case in order that the Board may expressly decide whether § 3126 (a)(8) defines a crime of moral turpitude.

SCIRICA, *Chief Judge*, concurring.

In *Partyka v. Attorney General*, we compared reckless assault to criminally negligent assault, and concluded the latter did not qualify as a crime involving moral turpitude for purposes of 8 U.S.C § 1227(a)(2)(A)(i). 417 F.3d 408, 416 (3d Cir. 2005) ("We hold that negligently inflicted bodily injury lacks the inherent baseness or depravity that evinces moral turpitude . . . ."). We did not address the question presented in this case, whether a purposeful sex crime that does not require proof of mens rea for one

10

element can qualify as a crime involving moral turpitude. Several courts of appeals have held similar sex crimes to involve moral turpitude. *See Franklin v. INS*, 72 F.3d 571, 588 (8th Cir. 1995) ("Courts have consistently held that statutory rape is a crime involving moral turpitude, even though it has no intent element, because such a crime is 'usually classed as rape,' which 'manifestly involves moral turpitude.'") (citation omitted); *Castle v. INS*, 541 F.2d 1064, 1066 (4th Cir. 1976) (collecting cases); *see also Sheikh v. Gonzales*, 427 F.3d 1077, 1082 (8th Cir. 2005) (contributing to the delinquency of a minor); *Gonzalez-Alvarado v. INS*, 39 F.3d 245, 246 (9th Cir. 1994) (incest).

As the majority has noted, there is no precedential case nor Board precedent on this issue. Accordingly, I agree that we should remand so that the Board might answer in the first instance whether 18 Pa. Cons. Stat § 3126(a)(8)—which requires a purposeful touching but for which the legislature removed proof of lack of consent for a special class of victims—is a crime involving moral turpitude.